I'll move to our next argument of the morning. This is Social Security Appeal Number 22-2011. Mr. Duncan, nice to see you again. Good morning, Your Honor. It's Swiecichowski. Thank you. May it please the Court. This Swiecichowski was 50 years old at the alleged onset date. With her past relevant work, medium and semi-skilled and unskilled, no transferable skills were found. Now, the briefs I submitted, I think, do more than an adequate job of explaining the problems, the cherry picking by the ALJ, the distortion of the record at times. For example, referencing repeatedly normal gate when the record clearly indicates that there was an intelligate. But what I want to do is point out something that, when I was reading my briefs, I thought was a little lacking, and I think we, as Social Security practitioners, fall into that trap. We spend most of, and I've spent most of my professional career in this system, and I know it like the back of my hand, and I assume the courts always do too, but I'm not. What we're talking about in this particular case is a very subtle issue. The ALJ found the claimant limited to light work. She was 50 years old under the medical vocational guidelines, Rule 201.14, which is semi-skilled, unable to perform past relevant work, age 50 to 54. She would qualify if she was limited to sedentary. What we're talking about is changing the residual functional capacity from being able to lift 20 pounds occasionally, 10 pounds frequently, and standing for 6 out of 8 hours to standing of 2 out of 8 hours and lifting 10 pounds occasionally and less than 10 pounds frequently. It's a very subtle point, and the point by this is that we have fibromyalgia as a condition, and the ALJ does outline the medical objective evidence regarding the other problems, her spine disorders, her right elbow, her carpal tunnel syndrome, her upper extremities, her major depressive disorder. The problem is that this court, being one of the first on fibromyalgia, and subsequent the sister circuits have said that Social Security was doing a poor job of assessing this. They created SSR 12-2P as an instruction, a manual of how an administrative law judge is to assess the record. That's what that provision says. It should be followed by the ALJ, and it specifically notes that you cannot isolate the conditions. If you have underlying medical conditions, you have to look at whether the fibromyalgia overlays and causes more significant problems than merely the objective evidence shows, and that's where we're resting this case upon, is that the judge did not do an adequate job of making that assessment, and there is a legitimate argument that she should have been found at the sedentary limitation based upon her statements, based upon the medical information. I outlined the problems with the state agency assessments. They assessed the case before she was completely worked up on her fibromyalgia. So they mentioned that there was a diagnosis, but the actual tender point diagnosis that was done by the nurse practitioner was done after their assessments. As I also indicated, the problems were noted with the record itself, and what the judge has to do is he has to also look at the medical record and assess the fact that the condition waxes and wanes, so there may be points where she doesn't report problems, and then the next time she does. I would note that, for example, he noted no acute distress, five of five strength in the lower extremities, sensation. He talks about pinprick, temperature, normal reflux, and he says normal gait. I would point out that he cites Exhibit 4F, 15, and 13F, 35, and support both from antelgic gait, 12F at 7, noted impaired gait. The Exhibit 4F, page 15, did note five of five strength, but then went on to note that she had experienced pain doing the finger-to-nose test, and that she had pain in her lower extremities, in addition to her right arm. She was referred to pain management. Mr. Duncan, can I take you back to the first point? Fibromyalgia, this is a difficult appeal. Correct. I get that. Where I get a slight bit disconnected, that you could help me, okay? Sure. I understand the point you're making about you can't just isolate a condition that way. You have to look at the condition and whether the fibromyalgia is intersecting with it somehow. That's the point you're making. You're saying that's as clear as day out of 12-2P. Correct. It's a Venn diagram. I follow that. I think I do. Okay. Now, when I look at the ALJ's decision, and I look specifically at the analysis on page 27, you have it there? I can correct that. It looks to me like that's what the ALJ is doing. I know you're going to say, no, no, no. Can you walk me through where it is that you see that the ALJ is not doing what you described? You're talking about the first full paragraph? Yeah, exactly. So combined effects are being considered. Combined effects, impairments might be greater than expected without the disorder, et cetera. So it seems like the ALJ is at least mouthing the right words. Yes, he's providing boilerplate from the ruling. Where exactly in the decision does it indicate how he considered it? I mean, the only thing he has done is he indicated, I've considered it by pointing to these references that I've indicated that she had with the gate, and then went on and talked about her daily activities, which he, again, cherry-picked. He said she could cook. Her cooking was opening a can of soup and eating cereal. Okay, so rather than put it, do me this favor. You're putting it, and you're doing it in response to the question I asked, of course. Put it in the positive. Don't put it in the negative. In other words, if you were drafting this opinion, what would you have said consistent with the standard you articulated? You would have to, first of all, look at all of the various medical issues. That would be looking through the record and adequately and accurately conveying what the record says. And then outlining exactly that you'd have to take into account days that she was good versus days that she wasn't good and indicate, I've taken into account the waxing and waning considerations of fibromyalgia, and I find that the waning situations where the symptoms are less are more prevalent than the severity. And this is the evidence I've reviewed to support that point. While she has limitations in her daily activities, these are other daily activities that she's able to perform. It could have been done better by the ALJ asking additional questions at these hearings. An administrative law judge has a duty to develop the record. Specifically, when we're looking at a case where he is assessing credibility, because a practitioner is going to be left in the dark trying to figure out where an ALJ is going to go with these cases, unless he specifically asks or has questions or problems with something in the record. Because it's just too much. We would have five-hour hearings if, as a representative, you have to try to address every potential issue that an ALJ may have questions about. And this court has agreed with me on that point. There's multiple cases that say duty to inquire. It's codified, if you can call a social security ruling codification in SSR 16-3P, which specifically says you shall ask about treatment, you shall ask about daily activities, you shall ask. And in this particular case, there's a definite disparaging between what ALJ outlines and what his actual findings are. Mr. Duncan, you say that counsel would be in the dark, would have to explore every aspect of the record. In a sense, that's what you're asking the ALJ to do in the written opinion, right, is to go through all the records. Stepping back a bit, fibromyalgia, because of the lack of objective medical evidence to try to diagnose it, so much of it does bear upon the credibility of the claimant, right? And so I recognize the fact that an ALJ has to do more of a longitudinal analysis, particularly when it comes to fibromyalgia, because of exactly that, because it waxes and wanes, et cetera, et cetera. But how much is sufficient? I mean, the rule that you're asking us to adopt is that basically the ALJ has to not only look at every single thing in the record, but explain every single thing in the record in the written opinion. Not everything, Your Honor, has to be explained, but there has to be enough of an explanation that you can trace the path of reasoning. And in this particular case, there are gaps. And when you add to that the gaps where there's things that were not addressed, which SSR 12-2P directs them to consider, and then combine that with the flaws or problems that he's misstated or only provided certain portions of the record, that highlights that the decision is not supported by substantial evidence. And that's the only issue in this case. So, all right? Thank you. Okay. Yeah, we'll give you a minute or so for rebuttal. Appreciate it. Okay. We'll hear from the Commissioner's Council. Good morning, Your Honors. May it please the Court. Margaret Sabota on behalf of the Acting Commissioner of Social Security. I wanted to start with a few points raised by Mr. Duncan during his argument, the first of which is a critical one to this case, and that is the fact that the administrative agency physician on reconsideration did review Ms. Burr's tender point evaluation before he issued his prior administrative medical finding. And that prior administrative medical finding, along with the initial one, provides substantial evidence support for the ALJ's decision that Ms. Swieczkowski was limited to a reduced range of light work. Following up on Judge Lee's question, I also wanted to address the question of how much is enough in an ALJ decision. And this Court has said before that an ALJ's decision need not be perfect. Its reasoning need only be easily discernible for review. And that is exactly what the ALJ's decision does here. Ms. Swieczkowski filed for disability insurance benefits for a variety of physical and mental impairments, but in this appeal put a spotlight on her fibromyalgia. And in assessing the about 400 pages of medical records in this case, the ALJ went through all of those different physical impairments, her mental impairments, explained how the findings on physical exam were mixed. Specifically said that at pages 26 and 27, I believe, of his decision. Sometimes she had a normal gait. Sometimes she had an abnormal gait. Sometimes she had full muscle strength and tone. Sometimes she had poor findings on exam. And that takes into account the waxing and waning symptoms that Mr. Duncan discussed. I'd also like to point out that as recently as January of 2020, the ALJ cited a record from neurologist Kaufman, who Ms. Swieczkowski consulted on for her right arm issues, where she was found to have five out of five muscle strength, completely normal muscle tone in both arms. Regarding Mr. Duncan's statement that now Ms. Swieczkowski is resting his case on this overlay of fibromyalgia with respect to her other conditions, I don't believe that that's what his briefing to this court or to the district court focused on. The ALJ, as Judge Scudder pointed out, very clearly discussed her fibromyalgia in combination with other impairments. And I'd also like to note that in Ms. Swieczkowski's brief, she stated repeatedly that fibromyalgia, quote, may cause additional problems, but doesn't cite to any evidence in the record that her fibromyalgia, on top of other physical conditions, did cause additional problems in her case. And as with any Social Security disability case, it's the claimant's burden to present sufficient evidence to satisfy the standard of disability. And with respect to Mr. Duncan's statement of this light work versus sedentary work being dispositive, while that may very well be the case under the medical vocational grid rules, it nevertheless is Ms. Swieczkowski's burden to establish that she was limited to sedentary work. And on the record here, the ALJ's findings are easily discernible, supported by substantial evidence, and free from legal error, and we'd ask this court to affirm. One of the points that's – or one of the pieces of evidence that's relied upon for the sedentary restriction, is it not his nurse practitioner, Burr's, completion of the checklist? Yes, Your Honor, the checkbox forms. Checkbox form, that way. There's a point that I think you make in your brief that that particular position was never presented to the district court. Yes, Your Honor. Both the prior administrative medical findings and Ms. Burr's opinions were not raised by Ms. Swieczkowski before the district court and should be deemed waived. Do you know – I thought I had this here, but I can't find it. When was she diagnosed with fibromyalgia? There was an assessment by her pain specialist, Dr. Gautam, in August of 2018. That's at record 519. August of 2018? Yes, so a couple of months before her amended onset date. When she had originally applied for benefits, her initial alleged onset date was July of 2018, but as Mr. Duncan noted, she later amended it to her 50th birthday in October of 2018. When was her last date of employment? July of 2018, Your Honor. She had worked for 30 years, right? Something like that, yes, Your Honor. I was a warehouse worker. Okay. Okay, very well. Thank you very much. Thank you, Your Honor. Mr. Duncan, we'll give you a minute if you have a point you want to make. A claimant's subjective statements cannot be ignored, and that makes it even more the case in fibromyalgia cases. I've outlined in my brief on page 32, the initial brief, all of the various elements that are considered when assessing a medically determinable impairment that impact on this. Ultimately, the issue was that Mrs. Swiecikowski indicated that she had severe fatigue and that she was tired and had difficulty. She had memory loss. She had anxiety, headaches, insomnia. She had side effects of her medications, which I outlined in the reply brief, were substantial. Nortatriptyline is notorious for having rather severe side effects, in addition to the pain medications. And I don't see whether there's an assessment by the ALJ of the pain medications or any of these other medical findings that are in the record that show that she was complaining of fatigue or other associated points. And that's ultimately the problem. It may very well be, if this court were to remand, that we go back and the judge does the decision and denies again. I don't know. All I'm asking is that this decision does not provide sufficient basis and that this should be reevaluated based upon the ruling. Thank you. Thanks to you. Thanks, Ms. Sabota, to you as well. We'll take the appeal under advisement.